UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| DAVID PAUL GONZALES, *et al*, § <br> § <br> Plaintiffs, § <br> VS. § <br> § <br> SEADRILL AMERICAS, INC., *et al*, § <br> § <br> Defendants. § | CIVIL ACTION NO. 3:12-CV-00308 |

## MEMORANDUM AND ORDER

This is a case involving injuries allegedly sustained by two offshore-oil-rig workers during a helicopter ride off the coast of Mexico. Plaintiffs and the defendant oil platform operator want the helicopter operator to also be part of this lawsuit. The helicopter operator contends that as a Mexican corporation it is not subject to personal jurisdiction in Texas for an alleged tort that occurred outside this country.

## I.  BACKGROUND[1]

Plaintiff David Paul Gonzales is a resident of Louisiana. Plaintiff Luis Ledesma is a resident of Arizona. Gonzales and Ledesma were employed by Defendant/Third-Party Plaintiff Seadrill Americas, Inc. as crewmembers of the WEST PEGASUS at the time of the incident. WEST PEGASUS is a semi-

---

[1] The parties disagree about whether certain entities are actually subsidiaries of Pegaso Mexico and whether "long term debt" reflected on a Pegaso financial statement is for helicopter lease payments or some other financing. The Court resolves all credibility determinations in favor of Seadrill and Plaintiffs at this stage.

submersible drilling unit that was located in Mexican territorial waters of the Gulf of Mexico, east of Matamoros, when Gonzales and Ledesma were allegedly injured.

Defendant/Third-Party Defendant Transportes Aereos Pegaso (Pegaso Mexico) is a Mexican company that provides air charter services within Mexico, mostly by helicopter. Pegaso Mexico does not have any offices in Texas and only conducts occasional flights in and out of Texas. Pegaso Mexico uses two wholly-owned subsidiaries—Pegaso USA, LLC and Pegaso, Inc.—to procure helicopter leases for its air taxi service.[2] Pegaso USA, LLC is a Delaware corporation whose only American officer—the brother-in-law of Pegaso's president, Enrique Zepeda Navarro—resides in Texas. Pegaso, Inc. is incorporated and based in Texas. According to Pegaso Mexico, the sole reason for the existence of Pegaso USA and Pegaso, Inc. is to procure leases for six aircraft Pegaso Mexico operates. Seadrill and Plaintiffs do not dispute the functions of these subsidiaries, instead arguing that "Pegaso, Inc. held all of Pegaso Mexico's long term debt," Docket Entry No. 33 ¶15, and that "Pegaso Mexico would be unable to conduct its business operations" without them. Docket Entry No. 42 ¶11 (emphasis omitted). The

---

[2] Seadrill also discusses Westlake Aviation in its Response to Pegaso's Motion to Dismiss. *See* Docket Entry No. 33 at 5, 7–8, 13–14. But Seadrill has not demonstrated how Westlake's activities are of a sufficient quantum and quality to give rise to general jurisdiction. Nor has Seadrill presented any evidence of Westlake's connection to this incident so as to render specific jurisdiction proper over Westlake, much less Pegaso Mexico. So—even assuming Westlake is a subsidiary of Pegaso Mexico as argued by Seadrill and Plaintiffs—this does not change the Court's ultimate conclusion.

helicopter that Plaintiffs were riding on when they were allegedly injured was not procured by either of these subsidiaries.

The WEST PEGASUS was operated by Seadrill and the Mexican state-owned petroleum company Pétroleos Mexicanos, known as Pemex, at the time of the incident at issue. Pemex hired Pegaso Mexico to transport workers from the WEST PEGASUS to the Mexican mainland via helicopter. The helicopter that carried Plaintiffs has a Mexican civil aviation registration and, like all of Pegaso Mexico's aircraft, is based in Mexico.

Ledesma and Gonzales were working as medic and mechanic, respectively, on the WEST PEGASUS in July 2012. On or about July 13, 2012, a Pegaso Mexico helicopter that had departed Matamoros was taking Gonzales and Ledesma from the WEST PEGASUS back to shore in Mexico. During this flight, the helicopter allegedly went into freefall, injuring Plaintiffs.

Plaintiffs filed suit against Seadrill and Pegaso Mexico, but failed to serve the latter. Seadrill then filed and served a cross claim asserted against Pegaso Mexico. Pegaso Mexico filed a motion to dismiss for lack of personal jurisdiction, leading the Court to allow time for jurisdictional discovery. The issue has now been fully briefed and is ripe for decision.

## II. LEGAL STANDARDS

### A. Rule 12(b)(2)

The plaintiff bears the burden of demonstrating facts sufficient to support jurisdiction when a nonresident defendant challenges personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985) (citations omitted). "When the district court rules on a motion to dismiss for lack of personal jurisdiction 'without an evidentiary hearing, the plaintiff may bear his burden by presenting a *prima facie* case that personal jurisdiction is proper.'" *Quick Techs., Inc. v. Sage Grp. PLC*, 313 F.3d 338, 343 (5th Cir. 2002) (quoting *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994)). The court "must accept as true the uncontroverted allegations in the complaint and resolve in favor of the plaintiff any factual conflicts." *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 869 (5th Cir. 2000) (quoting *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999) (alterations omitted)). The court can also consider "'any combination of the recognized methods of discovery,' including affidavits, interrogatories, and depositions to assist in its jurisdictional analysis." *Little v. SKF Sverige AB*, 2014 WL 710941, at *2 (S.D. Tex. Feb. 24, 2014) (quoting *Walk Haydel & Assocs., Inc. v. Coastal Power Prod Co.*, 517 F.3d 235, 241 (5th Cir. 2008)). "But the court is not obligated to credit conclusory allegations, even if uncontroverted." *Mobius Risk Grp., LLC v. Global Clean Energy Holdings, Inc.*,

2012 WL 590926, at *2 (S.D. Tex. Feb. 22, 2012) (citing *Panda Brandywine Corp. v. Potomac Elec. Power*, 253 F.3d 865, 868 (5th Cir. 2001)).

**B. The Law of Personal Jurisdiction**

A federal court presiding over a maritime matter may only exercise jurisdiction over parties subject to the long-arm statute of the state in which the court sits, and only to the extent that such exercise does not violate the Constitution. *See Submersible Sys., Inc. v. Perforadora Central, S.A. de C.V.*, 249 F.3d 413, 418 (5th Cir. 2001) (citing Fed. R. Civ. P. 4(k)(1)). Because the Texas long-arm statute confers jurisdiction to the limits of due process, "the two-step inquiry collapses into one federal due process analysis." *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008); *see also* Tex. Civ. Prac. & Rem. Code Ann. §§ 17.041–.045 (West 2013). Federal due process permits the exercise of personal jurisdiction over a nonresident defendant when: (1) "the non-resident purposely availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the state;" and (2) "the exercise of jurisdiction does not offend 'traditional notions of fair play and substantial justice.'" *Johnston*, 523 F.3d at 609 (quoting *Wilson*, 20 F.3d at 647).

"There are two types of 'minimum contacts': those that give rise to specific personal jurisdiction and those that give rise to general personal jurisdiction." *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001). Two Supreme Court decisions

issued on the same day in 2011 highlight the substantially higher degree of contacts needed to establish general jurisdiction, which is "all-purpose" and grants a court the power "to hear any and all claims against" a party regardless of where the events at issue took place, than specific jurisdiction, which is "case-linked" and grants a court only the power to hear "issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Compare Goodyear Dunlop Tires Operations v. Brown*, 131 S. Ct. 2846, 2851 (2011) (citations and internal quotations marks omitted) (ruling on general jurisdiction), *with J. McIntyre Mach., Ltd. v. Nicastro*, 131 S. Ct. 2780, 2787–88 (2011) (ruling on specific jurisdiction).

If a plaintiff is able to establish the contacts necessary for either general or specific jurisdiction, the burden then shifts to the defendant to show that exercising jurisdiction would be unreasonable, meaning it would offend traditional notions of fair play and substantial justice. *See Luv N'care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 473 (5th Cir. 2006) (citations omitted).

### III. ANALYSIS

Plaintiffs and Seadrill assert that Pegaso Mexico's contacts with Texas are sufficient to invoke both general and specific jurisdiction. For the reasons discussed below, the Court finds that neither basis for jurisdiction exists.

### A.  General Jurisdiction

Twice in the last three years, the Supreme Court has reiterated that the contacts required for defendants to be subject to general jurisdiction must be "so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear*, 131 S. Ct. at 2851 (citation omitted); *Daimler AG v. Bauman*, 134 S. Ct. 746, 761 (2014) ("Accordingly, the inquiry under *Goodyear* is not whether a foreign corporation's in-forum contacts can be said to be in some sense 'continuous and systematic,' it is whether that corporation's 'affiliations with the State are so "continuous and systematic" as to render [it] essentially at home in the forum State.'" (quoting *Goodyear*, 131 S. Ct. at 2851)).  Although the Supreme Court expressly noted that general jurisdiction is not limited to forums where a corporation is incorporated or maintains its principal places of business, *Daimler*, 134 S. Ct. at 761 n.19, those are the "paradigm" situations in which a corporation is "at home." *Goodyear*, 131 S. Ct. at 2853–54; *see also Daimler*, 134 S. Ct. at 760 ("Those affiliations have the virtue of being unique—that is, each ordinarily indicates only one place—as well as easily ascertainable."). The "essentially at home" standard is met only when "the continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit . . . on causes of action arising from dealings entirely distinct from those activities." *Daimler*, 134 S. Ct. at 761 (quoting *Int'l Shoe v. Washington*, 326 U.S. 310, 318 (1945)

(emphasis omitted)); *see also Johnston*, 523 F.3d at 609 ("The 'continuous and systematic contacts test is a difficult one to meet, requiring extensive contacts between a defendant and a forum.'" (quoting *Submersible Sys.*, 249 F.3d at 419)).

Pegaso Mexico is not incorporated in Texas nor is its headquarters located in Texas. For general jurisdiction to exist, it thus must fit into that small, undefined category of other situations in which a foreign corporation is nonetheless "essentially at home" in a forum.[3] As the Second Circuit recently noted when reversing a district court's pre-*Daimler* holding that a Turkish company was subject to general jurisdiction in New York, "although *Daimler* and *Goodyear* 'd[o] not hold that a corporation may be subject to general jurisdiction *only* in a forum where it is incorporated or has its principal place of business,' those cases make clear that even a company's 'engage[ment] in a substantial, continuous, and systematic course of business' is alone insufficient to render it at home in a forum." *Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 226 (2d Cir. 2014) (per curiam) (quoting *Daimler*, 134 S. Ct. at 760–61) (emphasis in original).[4]

---

[3] The one such situation the Supreme Court has recognized, *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437 (1952), was a case in which a Philippine corporation had relocated to Ohio during WWII, essentially making Ohio its principal place of business during the war.

[4] Demonstrating the difficulty of establishing general jurisdiction outside of a forum where a defendant is incorporated or maintains its headquarters, only one federal court has apparently found jurisdiction in that situation since *Daimler* (even though more than 75 federal cases have already cited *Daimler*). *See Barriere v. Juluca*, 2014 WL 652831, at *7–9 (S.D. Fla. Feb. 19, 2014) (finding general jurisdiction in Florida over an Anguillan corporation with its principal

Numerous undisputed facts are at odds with a finding that Pegaso Mexico is "essentially at home" in Texas. Pegaso Mexico does not have any offices, property, employees, or registered agents in Texas. All of its aircraft are based and registered in Mexico. In 2012 and 2013, only three to five flights a year travelled from Mexico into Texas. Less than one percent of its flights travel anywhere in the United States, and no flights travel entirely within the United States.

Recognizing the scant contacts between Pegaso Mexico and Texas, Seadrill and Plaintiffs rely on the contacts of its Texas subsidiary, Pegaso, Inc. Pegaso, Inc. is a single-purpose financing entity that leases three helicopters from American companies that it then subleases to Pegaso Mexico. The helicopter involved in this case—one of 33 in Pegaso Mexico's fleet—is not one of the three leased from Pegaso, Inc.

The impact of a subsidiary's contacts on the general jurisdiction inquiry was at issue in *Daimler*, so that decision is worth recounting in more detail. Argentine plaintiffs sued Daimler, a German corporation, in the Northern District of

---

place of business in Anguilla because it "maintains a sales office in Florida" and conducts other business in Florida). That outlier is at odds with other courts' application of *Goodyear* and *Daimler* in similar situations, *see, e.g.*, *Barger v. Midland Funding, LLC*, 2014 WL 2812233, at *2 (D. Md. June 20, 2014) ("The fact, if it is a fact, that Defendants have a business location in Maryland with employees is by no means adequate to create a valid basis for general jurisdiction. To hold otherwise, as Plaintiff suggests, would be to render essentially every entity that has any significant operation in this State to general jurisdiction to the same degree as if Maryland were its principal place of business."), and relies on a pre-*Daimler* circuit decision that another court has doubted remains good law. *See Air Tropiques SPRL v. N. & W. Ins. Co., Ltd.*, 2014 WL 1323046, at *10 (S.D. Tex. Mar. 31, 2014) (discussing *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357 (11th Cir. 2006)).

California.  They alleged that a Daimler subsidiary, Mercedes–Benz Argentina, collaborated with Argentine state security forces to "kidnap, detain, torture, and kill certain Mercedes workers" during the Argentine "Guerra Sucia" ("Dirty War") of 1976 to 1983.  *Daimler*, 134 S. Ct. at 751–52.  All complained-of actions occurred in Argentina.  *Id.*  Those plaintiffs named only the German corporation as a defendant in their complaint and sought to hold Daimler vicariously liable for the actions of its Argentinian subsidiary.  *Id.* at 752.

The *Daimler* plaintiffs argued that jurisdiction in California was proper because Mercedes–Benz USA—an indirect subsidiary of Daimler incorporated in Delaware and having its principal place of business in New Jersey—maintained multiple California-based facilities and realized substantial revenues from California sales.  *Id.* at 752–53.  The Supreme Court concluded that even assuming Mercedes–Benz USA was at home in California and its actions could be imputed to Daimler, "there would still be no basis to subject Daimler to general jurisdiction in California, for Daimler's slim contacts with the State hardly render it at home there."  *Id.* at 760.  In doing so, the Court rejected the plaintiffs' request to "approve the exercise of general jurisdiction in every State in which a corporation 'engages in a substantial, continuous, and systematic course of business'" as "unacceptably grasping."  *Id.* at 761.

This Court will assume *arguendo*, as *Daimler* did, that the contacts of Pegaso Mexico's subsidiaries can be considered in making the general jurisdiction assessment.[5] *Daimler* makes clear, however, that a subsidiary being "at home" in the forum state does not automatically subject the parent to general jurisdiction. *See Air Tropiques SPRL v. N. & W. Ins. Co., Ltd.*, 2014 WL 1323046, at *10 (S.D. Tex. Mar. 31, 2014) ("What is clear from *Daimler* is that, for a court to exercise general jurisdiction over a foreign corporation, that corporation itself—not its managing agent or subsidiary or affiliate—must be 'at home' in the forum state." (citing *Daimler*, 134 S. Ct. at 761)). The Court must look at the forum state contacts, including those imputed from the subsidiary, in the context of the parent's overall operation. *See Sonera*, 750 F.3d at 226 ("Even assuming [defendant's three subsidiaries'] New York contacts should be imputed to [defendant], they do not shift the company's primary place of business (or place of incorporation) away from Turkey.").

The contacts of Pegaso, Inc.—an entity indisputably subject to general jurisdiction in this forum as a Texas corporation primarily conducting business in the State—are not enough to render the larger Pegaso Mexico enterprise "essentially at home" in Texas. The activities of Pegaso, Inc. mean that some of

---

[5] Because Pegaso USA is a Delaware corporation—with no connection to the incident at suit—that performs the same basic functions as Pegaso, Inc., the Court does not see a scenario in which Pegaso USA's activities would support a finding of general or specific jurisdiction over Pegaso Mexico in Texas if Pegaso, Inc.'s activities did not.

Pegaso Mexico's aircraft are leased out of Texas. But these aircraft still account for less than 10% of its fleet. Combining the subsidiaries' Texas contacts with the Texas contacts of Pegaso Mexico—the flights into Texas already discussed as well as contracts with Texas residents, purchasing some parts from Texas, and training pilots in Texas—still does not get close to making the Mexican parent at home in Texas. These combined contacts are similar to (and if anything less substantial than) those the Supreme Court found insufficient in *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415–17 (1984) (rejecting general jurisdiction when the nonresident defendant's contacts with Texas "consisted of sending its chief executive officer to Houston for a contract-negotiation session; accepting into its New York bank account checks drawn on a Houston bank; purchasing helicopters, equipment, and training services from [a Texas company] for substantial sums; and sending personnel to . . . facilities in Fort Worth for training."); *see also Johnston*, 523 F.3d at 610–11 (explaining "just how difficult it is to establish general jurisdiction" by citing numerous Fifth Circuit cases rejecting general jurisdiction, most of which had far more extensive contacts than those present in this case), a decision reached even before it arguably tightened the general jurisdiction standard in *Goodyear* and *Daimler*. *See, e.g.*, *Air Tropiques*, 2014 WL 1323046, at *10 ("Before *Daimler*, NWIC might have been subject to general jurisdiction in this forum."); David D. Siegel, *U.S. Supreme Court Severely*

*Circumscribes "Presence" as Basis for Personal Jurisdiction of Foreign Corporations*, 265 Siegel's Prac. Rev. 1, 2 (2014) ("The opportunities for personal jurisdiction of foreign corporations are of course much reduced after *Daimler*, but not gone entirely.").

For these reasons, Pegaso Mexico is not subject to general jurisdiction in Texas.

**B.    Specific Jurisdiction**

That leaves the specific jurisdiction question. Though not so substantial and continuous as to render Pegaso Mexico at home in Texas, its contacts in this State are likely sufficient to meet the much lower contacts threshold for specific jurisdiction. *Seiferth v. Helicopteros Atuneros, Inc.,* 472 F.3d 266, 271 (5th Cir. 2006) (noting that "relatively few contacts" can suffice for specific jurisdiction). The problem for Seadrill and Plaintiffs is that a contacts assessment is not the whole ball game in a specific jurisdiction analysis: the cause of action must "arise from" those contacts. *See Felch v. Transportes Lar-Mex SA DE CV*, 92 F.3d 320, 324 (5th Cir. 1996) ("Specific jurisdiction is appropriate when the nonresident defendant's contacts with the forum state arise from, or are directly related to, the cause of action." (citation omitted)). The contours of this requirement are not well defined. *See Breathwit Marine Contractors, Ltd. v. Deloach Marine Servs., LLC*, ---- F. Supp. 2d ----, 2014 WL 199026, at *4 (S.D. Tex. Jan. 16, 2014) ("Although

the Supreme Court has issued a number of rulings on the 'contacts' requirement, it has not offered direct guidance on the scope of the requirement for specific jurisdiction that the claim must 'arise out of or relate to' those contacts." (citations omitted)). But the facts in this case do not even approach the boundaries of this issue where the law is hazy.

Specific jurisdiction would undoubtedly exist in Texas if the alleged injuries took place during one of the rare instances in which a Pegaso Mexico aircraft is in Texas airspace. A tougher question would exist if the tort occurred over Mexican airspace but on a flight that departed from Texas. *Breathwit*, 2014 WL 199026, at *4–*6 (finding specific jurisdiction in a similar maritime scenario). And perhaps even closer to the line would be a situation in which the tort occurred on a flight entirely within Mexico, but on one of the three aircraft that are leased out of Texas.

The tort that allegedly occurred off the coast of Mexico in this case has none of those connections to Texas. The Texas contacts of Pegaso Mexico or Pegaso, Inc. are not even a "but for" cause of the incident, and, as this Court recently observed, the Fifth Circuit appears to require even a bit more of a causal relationship. *See Breathwit*, 2014 WL 199026, at *5–6 (discussing "but-for-plus" test). Plaintiffs and Seadrill have failed to show how their tort claims arise out of any contacts with Texas. *See Felch*, 92 F.3d at 324–26 (finding specific jurisdiction over a trucking accident in Mexico to be lacking in Texas because,

despite the trucking company having some contacts in Texas, the entire *Felch* route took place in Mexico (from Monterrey to Nuevo Laredo)). Specific jurisdiction is thus also lacking.

## IV. CONCLUSION

For the reasons given above, the Court finds that Pegaso is not subject to personal jurisdiction in Texas and **GRANTS** Pegaso's Motion to Dismiss (Docket Entry No. 20). The Court further **DENIES** Seadrill and Plaintiffs' requests for additional jurisdictional discovery (Docket Entry Nos. 33, 34, 42, & 45). Substantial jurisdictional discovery has already occurred, and the Court is able to determine that Pegaso is not subject to general jurisdiction under the Supreme Court's recent pronouncements on this issue. All claims against Pegaso are thus **DISMISSED WITHOUT PREJUDICE**.

**SIGNED** this 27th day of June, 2014.

_____
Gregg Costa
United States Circuit Judge[*]

---

[*] Sitting by designation.